UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
----------------------------------------------------------------X
MANUEL GOMEZ,

                    Plaintiff,

            -against-

FRATELLI INC TA FRATELLI PIZZA AND
RESTAURANT, and MICHELE MAZZA,

                    Defendants.
----------------------------------------------------------------X

**COMPLAINT**
**JURY TRIAL DEMANDED**

## JURISDICTION AND VENUE

1. This action arises under federal law, specifically the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., as well as under the laws of the State of New Jersey, including the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1 et seq., and the New Jersey Wage and Hour Law, N.J.S.A. § 34:11-56a et seq.

2. This Court has original jurisdiction under Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 216(b).

3. This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367(a), as those claims form part of the same case or controversy under Article III of the U.S. Constitution.

4. Venue is proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391(b), because the events or omissions giving rise to the claims occurred in Monmouth County, New Jersey, where Defendants conduct business and where Plaintiff was employed.

## THE PARTIES

### PLAINTIFF

5. Plaintiff MANUEL GOMEZ ("Plaintiff") or ("Plaintiff Gomez") or ("Mr. Gomez") resides at 234 Shrewsbury Ave Apt A, Redbank, NJ 07701.

**DEFENDANTS**

6. Defendant FRATELLI INC TA FRATELLI PIZZA AND RESTAURANT ("Defendant") or ("Defendant Fratelli´s") or ("Fratelli´s Pizza") is a corporation doing business in the state of New Jersey in the State of New Jersey at 480 NJ-35 Red Bank, NJ 07701.

7. Defendant Fratelli performed one or more of the following actions while Plaintiff worked for Defendant Fratelli: (1) hire the Plaintiff, (2) terminate the employment of the Plaintiff, (3) set the wage rate of Plaintiff, (4) maintain payroll records concerning the Plaintiff, or (5) institute work rules for the Plaintiff.

8. Defendant MICHELLE MASSA (Defendant Mazza) or ("Ms. Mazza") acts as the CEO of Defendant Fratelli.

9. On information and belief, Ms. Massa owns all or part of Defendant Fratelli and maintains his principal place of business at 480 NJ-35 Red Bank, NJ 07701.

10. Defendant Massa performed one or more of the following actions while Plaintiff worked for Defendant Massa: (1) hire the Plaintiff, (2) terminate the employment of the Plaintiff, (3) set the wage rate of Plaintiff, (4) maintain payroll records concerning the Plaintiff, or (5) institute work rules for the Plaintiff.

11. Defendant Fratelli and Defendant Massa will hereby be referred to jointly as ("Defendants") unless otherwise noted.

**ENGAGED INTERSTATE COMMERCE**

12. Defendants engaged in interstate commerce by purchasing goods and materials produced for commerce. These materials included cleaning products, cleaning equipment, cleaning supplies, and other items that were shipped across state lines for use in the operation of their cleaning company located in the state of New Jersey.

13. On information and belief, Defendants, both individually and collectively, operate as an enterprise whose annual gross volume of sales or business exceeds $500,000.00.

14. As an enterprise with annual gross sales exceeding $500,000.00 and engaged in interstate commerce through the purchase and handling of materials that crossed state lines, Defendants are subject to the overtime wage requirements of the Fair Labor Standards Act (FLSA).

**BACKGROUND FACTS**

15. Defendant Fratelli is a company engaged in the restaurant business, serving gourmet pizzas, salads, hot and cold subs, dinners, and catered foods in New Jersey.

16. Plaintiff worked at Defendant Fratelli´s store located at 480 NJ-35 Red Bank, NJ 07701.



Figure 1 Plaintiff's Workplace – Defendant Fratelli´s Location

17. Defendants hired Plaintiff Gomez as a w2 non-exempt wage earner in or around March 05, 2017.

18. Plaintiff stopped working for Defendants on February 26, 2024.

19. Defendants hired Plaintiff Gomez as a dishwasher, a role in which his primary duties included cleaning dishes, utensils, and kitchen equipment, maintaining sanitation standards, disposing of waste, and assisting with basic kitchen organization.

20. On or around April 2019, Defendants promoted Plaintiff Gomez to chef's assistant, expanding his responsibilities to include preparing ingredients, assisting with food preparation, handling kitchen equipment, ensuring proper food storage, and supporting the chefs in executing daily kitchen tasks.

21. Defendants compensated Plaintiff Gomez on a weekly basis throughout his employment.

22. Throughout his employment, Plaintiff Gomez consistently demonstrated a strong work ethic, diligently and professionally performing his job duties. He complied with all workplace policies, met performance expectations, and carried out his responsibilities without issue.

23. Plaintiff never engaged in conflicts with colleagues, never received any disciplinary warnings, and had no record of write-ups, negative evaluations, or other performance-related concerns. At no point did Defendants express dissatisfaction with his job performance.

## WORK SCHEDULE HISTORY

24. Between March 05, 2017, to February 26, 2023, Plaintiff's general work schedule was as follows, with 30 minutes of lunch:

| DAY | START TIME | END TIME | TOTAL |
|---|---|---|---|
| SUN | 12:00 PM | 9:30 PM | 12 Hours |
| MON | 10:00 AM | 9:30 PM | 11 Hours |
| TUE | OFF | OFF | OFF |
| WED | 10:00 AM | 9:30 PM | 11 Hours |
| THU | 10:00 AM | 9:30 PM | 11 Hours |

| | | | |
|---|---|---|---|
| **FRI** | 10:00 AM | 10:30 PM | 12 Hours |
| **SAT** | 10:00 AM | 10:30 PM | 12 Hours |
| | **TOTAL HOURS** | | 69 Hours |

Figure 2 Plaintiff General Work Schedule

25. The work schedule and hours reflected above are intended to represent an approximation of Plaintiff's regular work schedule during the relevant time periods. While exact starting and ending times may have varied from week to week, the schedule provided above accurately reflect the general pattern and approximate number of hours Plaintiff regularly worked for Defendants during each corresponding period.

## PAY HISTORY

26. From March 5, 2017, to December 31, 2019, Defendants compensated Plaintiff Gomez with a fixed weekly amount of $600, regardless of the total hours he worked.

27. From January 1, 2020, to December 31, 2022, Defendants paid Plaintiff Gomez a fixed weekly amount of $750, regardless of the total hours he worked.

28. From January 1, 2023, to February 26, 2024, Defendants paid Plaintiff Gomez a fixed amount of $900, regardless of the total hours he worked.

## FAILURE TO ACCURATELY RECORD AND COMPENSATE WORK HOURS

29. The New Jersey Department of Labor and Workforce Development requires employers to maintain detailed and accurate payroll records, including hours worked, rates of pay, gross wages, deductions, and net wages. Employers are further obligated to retain these records for a minimum of six years.

30. Defendants failed to implement and maintain a system to accurately record and compensate Plaintiff's work hours, in direct violation of these legal requirements. This failure resulted in incomplete or inaccurate payroll records, depriving Plaintiff of proper documentation of his wages and hours worked.

## FAILURE TO PAY MINIMUM WAGE CLAIMS

31. From March 5, 2019, to December 31, 2019, Defendants paid Plaintiff Gomez a fixed weekly amount of $600, which is equal to $8.70, divided by the hours she worked; this was below the minimum wage, when the minimum wage was $10.00 per hour.

32. From January 1, 2020, to December 31, 2020, Defendants paid Plaintiff Gomez a fixed weekly amount of $750, which is equal to $10.87, divided by the hours she worked; this was below the minimum wage, when the minimum wage was $11.00 per hour.

33. From January 1, 2021, to December 31, 2021, Defendants paid Plaintiff Gomez a fixed weekly amount of $750, which is equal to $10.87, divided by the hours she worked; this was below the minimum wage, when the minimum wage was $12.00 per hour.

34. From January 1, 2022, to December 31, 2022, Defendants paid Plaintiff Gomez a fixed weekly amount of $750, which is equal to $10.87, divided by the hours she worked; this was below the minimum wage, when the minimum wage was $13.00 per hour.

35. From January 1, 2023, to December 31, 2023, Defendants paid Plaintiff Gomez a fixed weekly amount of $900, which is equal to $13.04, divided by the hours she worked; this was below the minimum wage, when the minimum wage was $14.00 per hour.

36. From January 1, 2024, to February 26, 2024, Defendants paid Plaintiff Gomez a fixed weekly amount of $900, which is equal to $13.04, divided by the hours she worked; this was below the minimum wage, when the minimum wage was $15.13 per hour.

37. As a result, Defendants failed to pay Plaintiff Gomez at least the prevailing minimum wage for all hours worked, violating wage and hour laws.

38. Due to these underpayments, Defendants owe Plaintiff Gomez a total of $19,636.47 in unpaid minimum wages, as detailed in Figure 3.

**UNPAID OVERTIME CLAIMS**

39. From March 5, 2019, to February 2024, Defendants failed to pay Plaintiff the legally required overtime premium of 1.5 times his regular hourly rate for all hours worked beyond 40 per week, in violation of federal and state wage laws.

40. Instead of providing the overtime premium, Defendants improperly compensated Plaintiff at his straight-time rate for all hours worked, including those in excess of 40 hours per week, effectively denying him the additional wages he was entitled to under the law.

41. As a result, Defendants owe Plaintiff the difference between his straight time pay and the legally mandated overtime rate for all overtime hours worked.

42. Defendants engaged in this unlawful payment practice throughout Plaintiff's employment, from March 2017 to February 2024, systematically failing to compensate him for overtime hours.

43. Due to these violations, Defendants failed to pay Plaintiff a total of $51,948.31 in unpaid overtime wages, as detailed in Figure 3.

| Unpaid Wages | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Period start | Period end | Weeks in period | Weekly Amount Gave | Average total hours worked per week | Regular hourly rate | Regular hours worked per week | Average overtime worked per week | Minimum Wage | Unpaid minimum wage per hour | Proper overtime rate per hour | Unpaid Overtime per hour | Unpaid overtime pay per week | Unpaid overtime in period | Unpaid minimum wage in period | Total unpaid wages in period |
| April 28, 2019 | December 31, 2019 | 35 | $ 600.00 | 69 | $ 8.70 | 40 | 29 | $ 10.00 | $ 1.30 | $ 15.00 | $ 6.30 | $182.83 | $ 6,451.15 | $ 3,175.71 | $ 9,626.86 |
| January 1, 2020 | December 31, 2020 | 52 | $ 750.00 | 69 | $ 10.87 | 40 | 29 | $ 11.00 | $ 0.13 | $ 16.50 | $ 5.63 | $163.28 | $ 8,514.02 | $ 469.29 | $ 8,983.31 |
| January 1, 2021 | December 31, 2021 | 52 | $ 750.00 | 69 | $ 10.87 | 40 | 29 | $ 12.00 | $ 1.13 | $ 18.00 | $ 7.13 | $206.78 | $ 10,752.70 | $ 4,056.00 | $ 14,808.70 |
| January 1, 2022 | December 31, 2022 | 52 | $ 750.00 | 69 | $ 10.87 | 40 | 29 | $ 13.00 | $ 2.13 | $ 19.50 | $ 8.63 | $250.28 | $ 13,014.70 | $ 7,644.00 | $ 20,658.70 |
| February 1, 2023 | December 31, 2023 | 48 | $ 900.00 | 69 | $ 13.04 | 40 | 29 | $ 14.00 | $ 0.96 | $ 21.00 | $ 7.96 | $230.74 | $ 10,976.59 | $ 3,139.71 | $ 14,116.30 |
| January 1, 2024 | February 26, 2024 | 8 | $ 900.00 | 69 | $ 13.04 | 40 | 29 | $ 15.13 | $ 2.09 | $ 22.70 | $ 9.65 | $279.89 | $ 2,239.15 | $ 1,151.76 | $ 3,390.91 |
| | | | | | | | | | | | | Total | $ 51,948.31 | $ 19,636.47 | $71,584.78 |

Figure 3: Damage Calculation of Unpaid wages, Minimum wage and Overtime wages owed to Plaintiff Gomez

### DISABILITY DISCRIMINATION AND RETALIATION FACTS

44. Upon information and belief, Defendant Mazza assumed operational control of the restaurant in or around 2023, following her father's declining health. Her father, Rosario Mazza, passed away on January 30, 2024.

45. After assuming full control of operation, Defendant Mazza's management style significantly altered the work environment. Unlike her predecessor, she maintained a distant and impersonal relationship with staff.

46. On February 21, 2024, Plaintiff Gomez developed a severe and persistent cough, accompanied by breathing difficulty and fatigue. Concerned for his health, he sought emergency care at Riverview Medical Center. After a physical evaluation, he was diagnosed with pneumonia serious respiratory infection that left him physically debilitated and unable to work.

47. The attending physician advised Plaintiff to take three full days of medical leave, from February 21 through February 23, 2024. Plaintiff received an official doctor's note verifying the pneumonia diagnosis and the required recovery period. A copy of the note was provided to Defendant Mazza that same day. **Ex. 1_2024.02.21_Plaintiff´s doctors note_.**



Figure 4 Plaintiff medical leave from 02/21/2024 to 02/24/2024.

48. Pneumonia is a serious respiratory infection that inflames the lungs, impairs breathing, and causes fatigue, fever, and chest pain. Unlike a mild cold or flu, it can severely limit a person's ability to work and perform daily activities, requiring immediate medical treatment and rest.

49. Plaintiff's pneumonia substantially impaired major life activities, including breathing, working, and performing basic physical tasks.

50. Defendant Mazza acknowledged the diagnosis and, via text message, initially approved Plaintiff's return to work on Saturday, February 24, 2024. **Ex.2_2023.2.23_Message Exchange Between Plaintiff and Defendant Mazza Regarding Termination Following Disclosure of Disability and Alleged**

51. The following day, however, Defendant Mazza reversed course and instructed Plaintiff via text to "take the weekend off," thereby extending his absence through Sunday, February 25, 2024—beyond the period recommended by his physician. Plaintiff complied in good faith, assuming Defendants were acting in consideration of his recovery. **Ex.2_2023.2.23_Message Exchange Between Plaintiff and Defendant Mazza Regarding Termination Following Disclosure of Disability and Alleged**

52. On February 25, 2024, while Plaintiff was still recovering and preparing to return to work, Defendant Mazza abruptly sent him a message terminating his employment. The stated reason was vague dissatisfaction with his performance, despite no prior warnings or documented issues during his seven years of employment. **Ex. 3_ 2024.2.25_Defendant fired Plaintiff_**

53. Plaintiff was shocked by the termination, particularly in light of his long tenure, consistent performance, and recent illness. In response, he informed Defendant Mazza that it appeared he was being fired due to his medical condition. He questioned why, after seven years without issue, he was suddenly deemed "lazy" only days after taking protected medical leave. **Ex.2_2023.2.23_Message Exchange Between Plaintiff and Defendant Mazza Regarding Termination Following Disclosure of Disability and Alleged**



Figure 5 Plaintiff's text message alleging pretext for termination

54. Defendant Mazza denied that the termination was related to Plaintiff's illness, claiming instead that Plaintiff had failed to help a coworker, Edgar. However, Plaintiff had received no complaints or disciplinary write-ups regarding his performance, and this alleged concern was never raised until immediately following his medical leave.

55. The proximity between Plaintiff's protected medical leave and his termination, occurring just one day after his leave ended, demonstrates a retaliatory motive. Defendants failed to engage in any interactive process to accommodate Plaintiff's temporary disability or explore alternative solutions to preserve his employment.

56. Defendants' actions reflect a clear intent to punish Plaintiff for asserting his right to medical leave and for suffering from a temporary disability. Rather than offering support or accommodations, Defendants chose to terminate him at a time of extreme vulnerability.

57. Defendants' stated reasons for termination were pretextual, and their conduct violated Plaintiff's rights under the NJLAD. Their abrupt termination of a long-standing employee following disclosure of a medical condition reflects a callous and unlawful disregard for workers' rights and well-being.

## FIRST CAUSE OF ACTION
(Failure to Pay Minimum Wage)
Fair Labor Standards Act, 29 U.S.C. § 206)
*Asserted by Plaintiff Against all the Defendants*

58. Every fact alleged is repeated, re-alleged, and incorporated as though set forth herein.

59. The provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206, applied to the Defendants and protected Plaintiff while Plaintiff worked for the Defendants.

60. The FLSA prohibits an employer like the Defendants from failing to pay employees like Plaintiff at least the federal minimum wage for all hours worked.

61. The Defendants paid Plaintiff a fixed weekly salary that, when divided by the number of hours he regularly worked, fell below the applicable federal minimum wage, thereby depriving him of legally required compensation.

62. By the Defendants' unlawful failure to pay Plaintiff the federal minimum wage, they violated 29 U.S.C. § 206.

63. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## SECOND CAUSE OF ACTION
(Failure to Pay Overtime Wages)
(Fair Labor Standards Act, 29 U.S.C. § 207)
*Asserted by Plaintiff Against all the Defendants*

64. Every fact alleged is repeated, re-alleged, and incorporated as though set forth herein.

65. The provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, applied to the Defendants and protected Plaintiff while Plaintiff worked for the Defendants.

66. The FLSA prohibits an employer like the Defendants from failing to pay employees like Plaintiff overtime wages—at one-and-one-half times their regular rate of pay—for all hours worked in excess of forty hours per week.

67. The Defendants failed to pay Plaintiff any overtime premium, instead compensating him at a flat weekly rate that did not account for hours worked over forty in a workweek.

68. By the Defendants' unlawful failure to pay overtime compensation, they violated 29 U.S.C. § 207.

69. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## THIRD CAUSE OF ACTION
(Disability - Discrimination)
(New Jersey Law Against Discrimination, N.J.S.A. § 10:5-12)
*Asserted by Plaintiff Against all the Defendants*

70. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

71. The provisions of N.J.S.A. § 10:5-12 applied to the Defendants and protected Plaintiff while Plaintiff worked for the Defendants.

72. N.J.S.A. § 10:5-12 prohibits an employer like the Defendants from discriminating against employees like Plaintiff based on a disability or medical condition.

73. Defendants discriminated against Plaintiff by subjecting him to adverse treatment because of his medical condition.

74. By the Defendants' unlawful discriminatory conduct, they violated N.J.S.A. § 10:5-12.

75. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## FOURTH CAUSE OF ACTION
(Disability - Retaliation)
(New Jersey Law Against Discrimination, N.J.S.A. § 10:5-12)
*Asserted by Plaintiff Against all the Defendants*

76. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

77. The provisions of N.J.S.A. § 10:5-12 applied to the Defendants and protected Plaintiff while Plaintiff worked for the Defendants.

78. N.J.S.A. § 10:5-12 prohibits an employer like the Defendants from retaliating against employees like Plaintiff who engage in protected activities, such as requesting medical leave.

79. Defendants retaliated against Plaintiff for engaging in protected activities by unfairly firing him.

80. By the Defendants' unlawful retaliatory conduct, they violated N.J.S.A. § 10:5-12.

81. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## FIFTH CAUSE OF ACTION
(Failure to Accommodate – Disability)
(New Jersey Law Against Discrimination, N.J.S.A. § 10:5-12(a))
*Asserted by Plaintiff Against all the Defendants*

82. All allegations are hereby repeated, re-alleged, and reincorporated as though fully set forth herein.

83. The provisions of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-12(a), applied to the Defendants and protected Plaintiff while Plaintiff worked for the Defendants.

84. The NJLAD requires an employer like the Defendants to engage in a good faith interactive process and provide reasonable accommodations to employees with disabilities.

85. Plaintiff requested a short medical leave as an accommodation for his temporary disability—pneumonia—but Defendants failed to engage in any interactive process and instead terminated his employment while he was still recovering.

86. By the Defendants' unlawful failure to accommodate Plaintiff's disability, they violated N.J.S.A. § 10:5-12(a).

87. As a result of the unlawful conduct described herein, Plaintiff suffered harm.

## SIXTH CAUSE OF ACTION
(Failure to pay Minimum Wage)
(N.J.S.A. 34:11-56a4; New Jersey State Wage and Hour Law)
*Asserted by Plaintiff Against all the Defendants*

88. All allegations are hereby repeated, re-alleged, and reincorporated as though fully set forth herein.

89. The minimum wage provisions of the New Jersey Labor Law and its supporting regulations apply to Defendants and protect the Plaintiff.

90. Defendants failed to pay Plaintiff minimum wages, to which Plaintiff was entitled under the New Jersey Labor Law and the supporting New Jersey State Labor Regulations.

91. By Defendants' knowing or intentional failure to pay Plaintiff minimum wages for hours worked, they have willfully violated the New Jersey Labor Law and the supporting New Jersey State Department of Labor Regulations.

92. Due to Defendants' violations of the New Jersey Labor Law, Plaintiff is entitled to recover unpaid minimum wages, liquidated damages, reasonable attorney's fees and costs of the action, and pre-judgment and post-judgment interest from Defendants.

## SEVENTH CAUSE OF ACTION
(Failure To Pay Overtime Wages)
(N.J. Admin. Code § 12:56-6.1; The New Jersey Labor Law)
*Asserted by Plaintiff Against all the Defendants*

93. All allegations are repeated, re-alleged, and reincorporated as though set forth herein.

94. The New Jersey Labor Law's overtime wage provisions and supporting regulations apply to Defendants and protect the Plaintiff.

95. Defendants failed to pay Plaintiff overtime wages to which Plaintiff was entitled under the New Jersey Labor Law and the supporting New Jersey State Labor Regulations.

96. By Defendants' knowing or intentional failure to pay Plaintiff overtime wages for hours worked, they have willfully violated the New Jersey Labor Law and supporting New Jersey State Department of Labor Regulations.

97. Due to Defendants' violations of the New Jersey Labor Law, Plaintiff is entitled to recover unpaid overtime wages, liquidated damages, reasonable attorney's fees and costs of the action, and pre-judgment and post-judgment interest from Defendants

## EIGHTH CAUSE OF ACTION
(Aiding and Abetting Liability)
(N.J.S.A. § 10:5-12(e))
*Asserted by Plaintiff Against Defendant Mazza*

98. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

99. The provisions of the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-12(e), applied to the Defendants and protected Plaintiff while he was employed by Defendants.

100. N.J.S.A. § 10:5-12(e) prohibits any person, including individuals in supervisory or managerial roles, from aiding, abetting, inciting, compelling, or coercing acts of discrimination or retaliation against an employee based on a protected characteristic, including disability.

101. Defendant Michele Mazza, in her capacity as a managerial agent of Defendant Fratelli, knowingly engaged in, facilitated, and permitted acts of unlawful disability discrimination and retaliation against Plaintiff.

102. Defendant Mazza's conduct—including authorizing Plaintiff's termination immediately after disclosure of his disability, extending his leave without medical justification, and failing to accommodate his condition—constituted active participation in and facilitation of unlawful acts in violation of the NJLAD.

103. By aiding and abetting the discriminatory and retaliatory treatment of Plaintiff, Defendant Mazza violated N.J.S.A. § 10:5-12(e).

104. As a direct result of this unlawful conduct, Plaintiff suffered economic and emotional harm.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff seeks all available remedies under all causes of action listed herein in this Complaint and any and all remedies that the Court deems just and proper. Including but not limited to All lost wages and benefits, front pay, pre judgment and post judgment interest, liquidated damages, punitive damages, statutory

penalties, emotional distress damages; recovery of reasonable costs, attorney fees, and expenses; equitable relief, and any other relief considered just and proper.

Dated: White Plains, New York
July 4, 2025

EL-HAG & ASSOCIATES, P.C

*Jordan El-Hag*
Jordan El-Hag, Esq.
Attorney for Plaintiff
777 Westchester Ave , Suite 101
White Plains, N.Y, 10604
(914) 218-6190 (p)
(914) 206-4176 (f)
Jordan@elhaglaw.com
www.elhaglaw.com
